UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

VANE LINE BUNKERING, INC.
    Plaintiff,

  v.

Case No. 11-CV-240

THE MANITOWOC COMPANY, INC.
    Defendant and Third Party Plaintiff,

  v.

FINCANTIERI MARINE GROUP HOLDINGS, INC.

  and

FINCANTIERI-CANTIERI NAVALI ITALIANI S.p.A
    Third Party Defendants.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANT'S' MOTION TO DISMISS

Plaintiff, Vane Line Bunkering, Inc. ("Vane"), filed this action against The Manitowoc Company, alleging that, under a parent guaranty, Manitowoc Company assumed the responsibility to indemnify Vane for third-party liability incurred as a result of Manitowoc Company's subsidiary's negligence in constructing a tug-barge vessel.

Manitowoc Company impleaded the Third-Party Defendants, asserting that under a subsequent agreement for the purchase of the subsidiary, the Third-Party Defendants must indemnify Manitowoc Company against Vane's claim.

Under Federal Rule of Civil Procedure 14, Third-Party Defendant Fincantieri Marine Group Holdings, Inc. ("Fincantieri"), moved to dismiss Vane's claim against Manitowoc. Fincantieri contends that the contract, on its face, fails to support Vane's claim.

Fincantieri's motion is premised on a misreading of the contract and a misunderstanding of two basic legal concepts. Moreover, even if Fincantieri's interpretation of the contract were arguably supportable, it would at most present an ambiguity that could not be resolved on a motion to dismiss. Therefore, Fincantieri's motion should be denied.

## COMPLAINT ALLEGATIONS

In November 2005, Vane entered into a Shipbuilding Agreement with Manitowoc Marine Group, LLC ("MMG") for the construction of two tug-barge vessels. (Compl. ¶ 5). To induce Vane to enter into the agreement with MMG, Manitowoc Company provided Vane with a Parent Guaranty pursuant to which Manitowoc Company agreed to answer for all deficiencies in MMG's performance under the Shipbuilding Agreement. (See id., Ex. A at Ex. I.). In October of 2007, MMG delivered the tug/barge vessel, "DS-143," to Vane. (Compl. at ¶ 6).

As part of the Shipbuilding Agreement, MMG warranted to Vane that all the materials, equipment, and workmanship furnished by MMG in constructing the DS-143 were provided in a "good and workmanlike manner." (Compl., Ex. A, § 11. p. 20.) The Agreement limited this warranty, explaining that MMG would have "no responsibility" with respect to any "defect, claim, or loss [. . .] one year from the date of delivery" unless informed in writing. (Id.)

In a separate part of the contract, MMG agreed that:

> Builder [MMG] shall indemnify and save Owner harmless from any and all liability, expenses (including attorneys' fees), costs, damages, and/or losses of any kind, to the extent arising out of or resulting from the negligent acts or omissions of Builder, its employees, agents or subcontractors, including claims, etc. arising out of injuries to or death of persons or loss or damage to property of any kind.

2

(Compl. Ex. A, § 20, p. 26).

On August 8, 2009, while one of the DS-143s was chartered by Vane to Sunoco, it was discovered that aviation gasoline held in one of the DS-143's cargo tanks leaked into a neighboring tank, contaminating the gas oil in that tank. (Compl. ¶ 7). As a result, the owner of the contaminated gas oil, Chevron, asserted a claim against Sunoco. (Compl. ¶¶ 9-12). Sunoco in turn made a claim against Vane for the damages, attributing them to a problem with the DS-143's "bronze sway bars." (Compl. ¶¶ 14, 17). Vane ultimately agreed to pay $200,000.00 to resolve Sunoco's claim. (Compl. ¶ 15).

Manitowoc refused to accept responsibility for this claim under the Shipbuilding Agreement *via* the Parent Guaranty. (Compl. ¶ 23.) Vane therefore brought this action to enforce the terms of the Parent Guaranty and Shipbuilding Agreement.

In August 2008, Manitowoc entered into a purchase agreement with Third-Party Defendants FMGH and Fincantieri-Cantieri Navali Italiani, S.p.A ("FCN"), whereby Fincantieri purchased MMG from Manitowoc. (Third Party Compl. ¶¶ 8, 9). Manitowoc claims that Fincantieri and an affiliated company agreed to indemnify Manitowoc for claims such as Vane's, and it named them as Third-Party Defendants. (Third Party Compl. ¶15). Vane's barges (including the DS-143) were completed and delivered prior to the sale of MMG to Fincantieri. (Cf. Compl. ¶ 5; Third-Party Compl. ¶¶ 8, 9.) Vane was not aware of the details of the transaction, and it is irrelevant to Vane's claim against Manitowoc Company under the parent guaranty.[1]

Fincantieri now moves to dismiss Vane's claims, relying on the warranty provision's one-year limitation. But, as further explained below, Vane's claim is not based on warranty.

---

[1] It is Vane's understanding that Manitowoc Company contacted some of its customers to request permission to assign its parent-guaranty obligations to those customers to Fincantieri, but it did not contact Vane with any such request.

3

Instead, the claim arises under the indemnity clause. Because Manitowoc Company's promise to indemnify has no time limit, Vane has properly stated a claim on which relief can be granted. Therefore, the Court should deny Fincantieri's Motion to Dismiss.[2]

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)[3], and to satisfy the standard articulated by the Supreme Court in <u>Ashcroft v. Iqbal U.S.</u>,129 S. Ct. 1937 (2009), a plaintiff need only allege facts that show that a claim is plausible on its face <u>Bausch v. Stryker Corp.</u>, 630 F.3d 546, 558 (7th Cir. 2010) (quotation omitted). A claim is facially plausible when the facts alleged allow the court to draw the reasonable inference that the defendant is liable. <u>Id.</u> Accordingly, the federal "notice pleading" standard still applies. <u>Id.</u> Moreover, even under <u>Iqbal</u>, all allegations in the complaint must be taken as true for purposes of the motion to dismiss, and all reasonable inferences must be drawn in the plaintiff's favor; in fact, this principle is even *more* important under <u>Iqbal</u>. <u>L–7 Designs, Inc. v. Old Navy, LLC</u>,--- F.3d ----, 2011 WL 2135734, at n.11.

In a pre-<u>Iqbal</u> decision that is nonetheless consistent with <u>Iqbal</u>, the Southern District of New York described the motion-to-dismiss standard as applied in the contract-interpretation context:

> [Defendant's] argument, which goes to the interpretation of the contract and thus implicates the very merits of plaintiff's cause of action, cannot prevail unless EMI's interpretation of the contract as put forward in its complaint is so patently baseless that, as a matter of law, it could not conceivably have obligated [Defendant] . . . . . .

---

[2] Vane has been granted leave to amend its complaint through September 2, 2011. Unfortunately, the deadline for this motion's response precedes that deadline. Vane is likely to add tort claims that will entirely fall outside the scope of Fincantieri's Rule 12(b)(6) motion.

[3] Defendant's motion might also be considered a motion for judgment on the pleadings, because the Defendant has filed an answer, <u>see</u> Fed. R. Civ. P. 12(c), but the standard for reviewing those motions is the same as governs motions under Fed. R. Civ. P. 12(b)(6). <u>See</u>, e.g., <u>R.J. Corman Derailment Servs., LLC, v. Int'l Union of Operating Engineers</u>, 335 F.3d 643, 647 (7th Cir. 2003).

EMI Ltd. v. Picker Int'l, Inc., 1987 WL 19634, *2. The Court permitted the action to proceed because, while it took "no position on the ultimate meaning to be given the agreement," the language was "susceptible" of the plaintiff's reading and therefore could not "betray, as a matter of law, the plaintiff's complaint." Id. at *3. Accordingly, Fincantieri's motion must be denied if Vane's interpretation of the agreement is plausible – regardless of whose interpretation is ultimately determined to be correct.

Additionally, Fincantieri's motion must be denied if it is not apparent that "the contract provisions . . . are so unambiguous that the interpretation of the contract exclusively is a matter for the Court and not for a jury." Operative Bricklayer's Union No. 64 of PA. Welfare Fund, Bricklayer's Union Local No. 1, 45 F.R.D. 429, 431 (E.D. Pa. 1968). Where the provisions' meaning is ambiguous, the parties must be permitted to introduce factual evidence at trial because "it would be improper" for a court "to interpret the contract finally in ruling upon a motion to dismiss." Id.

In ruling on the motion, the Court may also consider additional facts that are generally consistent with the complaint in order to give plaintiffs the benefit of the broad standard employed on motions to dismiss. Flying J Inc. v. City of New Haven, 549 F.3d 538, 542 n.1 (7th Cir. 2008).

## ARGUMENT

### I. FINCANTIERI GARBLES THE PLAIN MEANING OF THE CONTRACT.

The agreement cannot reasonably be interpreted as Fincantieri contends. Fincantieri's motion confuses or ignores the distinct concepts of "warranty" and "indemnity," a mistake that sends its entire argument hopelessly off track. Further, Fincantieri ignores basic contract principles, including the directives that a court must give effect to every provision and avoid

5

absurd results. Finally, Fincantieri's tenuous interpretation of the agreement could only even be indulged under a theory of ambiguity, which could not be resolved on a motion to dismiss.

**A. Section 20 of the Shipbuilding Agreement Supports to Vane's Claim.**

Fincantieri argues that the warranty time-limit contained in Section 11 applies to Vane's claim, and that because the problem with DS-143 was not reported within one year of delivery to Vane, Vane cannot assert a cause of action under the Shipbuilding Agreement. Fincantieri's argument confuses and conflates two very distinct, basic concepts: "warranty" and "indemnity."

A "warranty" is defined as "an assurance by one party to a contract of the existence of a fact upon which the other party may rely." Cianciola, LLP v. Milwaukee Metropolitan Sewer District, 2011 WI 35 ¶17.[4] In some circumstances, a breach of warranty may permit a party to revoke acceptance of goods. C.J.S. Sales §354. It is therefore logical that a warranty period may be relatively limited in time. That is especially understandable in this case, where the warranty period governed Vane's ability to demand that MMG repair or replace problems with the vessel. (Compl., Ex. A, § 11, p. 20.)

"Indemnity," in contrast, is a principle that shifts to another the loss incurred by a person who has been compelled to pay a third party. See, e.g., In re the Paternity of Jasmine, J.E., 198 Wis. 2d 114, 118, 542 N.W.2d 171 (Ct. App. 1995) (quotation omitted). "In general, indemnity is a form of compensation in which a first party is liable to pay a second party for a loss or damage the second party incurs to a third party." C.J.S. Indemnity §3.

In plain language, "warranty" applies where a party seeks to pursue another for the complaining party's own dissatisfaction with a product. "Indemnity," on the other hand, refers to a party's demand the other party reimburse him for amounts he has had to pay to a third party.

---

[4] Though Wisconsin law likely would have governed without it, the parties expressly designated Wisconsin law as controlling. (Compl. Ex. A, ¶ 23(d), p. 29.)

6

Treatises on contract drafting define the terms independently and characterize the respective drafting considerations as distinct. See, e.g., Kenneth A. Adams, A Manual of Style for Contract Drafting (2d ed. 2008) at pp. 253-55, pp. 313-16. Both warranty and indemnity may in some circumstances arise by operation of law, as opposed to by contract.

Likewise, in the Shipbuilding Agreement, Section 11 deals exclusively with any claim brought by Vane (*i.e.,* "Owner") against MMG (*i.e.,* "Builder") having to do with a "defect, claim, or loss of the Vessel" suffered by Vane. (Compl., Ex. A, § 11, p. 20.) The "Builder's Warranty" does not disclaim liability for damages caused to third parties as a result of defects in the vessel, or as a result of MMG's negligence. ((Id.)

In contrast, in Section 20, MMG agrees to "indemnify and save [Vane] harmless from any and all liability [. . .] resulting from the negligent acts or omissions of [MMG]." (Compl. Ex. A, § 20, p. 26). "Liability" is a word that connotes an obligation to another. See, e.g., Random House Dictionary of the English Language, (2d ed. 1987) at 1107 (defining term as "moneys owed"); *accord*, Black's Law Dictionary, 8th Ed. (2004) at 914 (defining "liability" as, *inter alia*, "legal responsibility to *another,*" *i.e*, a third party). The title of Section 20 reinforces this distinction, referring to "Indemnity Against Claims." (Id.) Simply stated, Section 20 is the part of the Agreement that governs claims arising out of Vane's liability to others because of MMG's negligence. It is therefore the part of the Agreement that governs ultimate liability for the Sunoco claim.

Even a lay person reading the two clauses could easily appreciate their divergent purposes. Section 11 provides Vane a limited warranty with regard to the "repairs and/or replacement" of physical defects in the vessel. (Compl. Ex. A, § 11, p. 20.) Section 20, in contrast, provides Vane the right to be indemnified by MMG for "any and all liability" to others

7

that is attributable to MMG's negligent acts. (Compl. Ex. A, § 20, p. 26.) The warranty provision in Section 11 is absolute, and authorizes repair-and-replace demands; in contrast, the indemnity provision in Section 20 includes damages incurred to others, but depends on a showing of a culpability.[5]

In this case, Vane is not seeking reimbursement for the repairs to the defective sway bars on the DS-143, but for the liability that arose due to contamination, along with its attorneys fees and expenses. *Cf*. Complaint, ¶ 23. Vane seeks to be indemnified and held harmless for damages it paid to another because MMG's *negligence* damaged a third party's property. This can only be described as an indemnity claim. It therefore triggers Section 20 and MMG's and Manitowoc's contractual obligations to indemnify and hold Vane harmless.

**B. Section 11 is Irrelevant to this Claim.**

Despite the distinct purposes of these provisions, it appears that Fincantieri assumes that if an indemnity claim involves any kind of problem with MMG's product, then there *must* be an

---

[5]This distinction can also be illustrated by assuming, for the sake of argument, a different fact situation: Vane's tug barge is tied up to a loading facility by ropes attached to cleats on the boat. The unloading process is then commenced. One or more of the cleats gives way and the boat begins to drift out into the harbor. As a result, the hoses being used for unloading begin to deposit gasoline or aviation gasoline into the waters of the harbor, not the containers where they were initially placed.

Vane is sued for contaminating the harbor. Vane brings a claim against Manitowoc Company for what turns out in subsequent testing to have been defective cleats, not the ones specified. This demand for repair and replace by Manitowoc Company probably would be nominal, but Vane's other claim – to be reimbursed for what it had to pay to clean up the harbor – may be in the millions. The cleat claim is a first-party claim between Vane and Manitowoc. The second claim (polluting the harbor) is a third-party claim brought by environmental authorities against Vane. When Vane pays that claim, it is entitled to be indemnified for what it had to pay for environmental clean-up. Vane has no right to anything under Section 11 other than "repair and replace," but under Section 20, it is entitled to all liability expenses or loss of any kind to the extent they are the result of negligent acts or omissions by the builder. The defective cleats are such an omission, but the environmental damage is far more expensive to Vane and the remedy for it is contained in an entirely separate section dealing with third-party claims, not first-party claims.

8

implicit warranty claim that triggers the warranty limits, which *must* extend the one-year limit to indemnity claims as well. But nothing in the agreement automatically transforms claims under Section 20 into Section 11 claims, nor does anything state that the one-year limit applies to indemnity and hold-harmless claims under Section 20. A condition to that effect cannot be judicially added for Manitowoc's benefit now. See Rosplock v. Rosplock, 217 Wis.2d 22, 31, 577 N.W.2d 32 (Ct.App.1998).

As Fincantieri concedes, where the terms of a contract are clear and unambiguous, the court must interpret it according to its literal terms. Gorton v. Hostak, Henzl & Bichler, S.C., 217 Wis. 2d 493, 577 N.W. 2d 617, 622-23 (Wis. 1998). Here, the contract plainly states that MMG and Manitowoc must indemnify Vane and hold it harmless for any losses attributable to MMG's negligent acts. Vane has alleged that as a result of MMG's negligence, property damage occurred, for which a third party demanded damages. This is a garden-variety example of an indemnification claim. Fincantieri's attempt to recharacterize the claim as one sounding in warranty should be rejected as inconsistent with the fundamental legal distinction between the two legal concepts, as well as the language of the contract itself.

### C. Sections 11 and 20 of the Shipbuilding Agreement Can be Read in Harmony.

Though it did not put its finger on the indemnity-warranty distinction, Fincantieri apparently anticipated that Vane would raise Section 20. It argues that "[t]he provision in Section 20 about the Builder indemnifying the Owner for losses arising from damage to property was not intended to read out of the Shipbuilding Agreement the limitation of the exposure of the shipyard for alleged defects in material and workmanship." (Fincantieri brief (Docket #18) at p. 4.) In Fincantieri's view, Section 11 trumps Section 20 without ever referring to it, so that the

9

Court should disregard Section 20 altogether. Fincantieri's interpretation contravenes basic principles of contract law.

Clauses that appear to conflict must be construed to give effect to the parties' intention as gathered from the whole contract, and harmonized, if possible. Isermann v. MBL Life Assur. Corp., 231 Wis. 2d 136, 153-154, 605 N.W. 2d 210, 217 (Wis. Ct. App. 1999). A court should avoid an interpretation that renders a contract's provisions inconsistent. Id. Rather, conflicting provisions must be reconciled, so as to give meaning to both, Sullivan v. Cuna Mut. Ins. Soc., 683 F. Supp. 2d 918, 931 (W.D. Wis. 2010), rather than nullifying any provision, if reconciliation can be effected by any reasonable interpretation of the entire instrument in light of the surrounding circumstances. 17Am. Jur. 2d Contracts § 385. Put simply, an interpretation should not be given to one part of a contract that will annul another part of it unless there is no other reasonable interpretation.

Based on its conflated view of the concepts of "warranty" and "indemnity," Fincantieri apparently concludes that there is no way to reconcile Section 11 with Section 20, and therefore, Section 20 must fail. As explained above, this is not the case. A reasonable interpretation – in fact, the only reasonable interpretation – of the two sections shows that they can be read in harmony, as they are not conflicting: Section 11 addresses claims or demands made by Vane against MMG for repair or replacement of physical defects in the vessel, while Section 20 governs liability for claims brought against Vane by a third-party complainant that arise out of MMG's negligence.

The two clauses govern entirely different circumstances. The warranty provision specifically deals with repair and replacement claims brought by Vane against MMG for Vane's own dissatisfaction with the vessel, while the indemnity provision specifically warrants that
10

MMG will answer for claims brought by third parties against Vane. As Fincantieri concedes, "a construction which gives reasonable meaning to every provision of a contract is preferable to one leaving part of the language useless or meaningless." Heritage Mut. Ins. Co. v. Truck Ins. Exchange, 184 Wis. 2d 247, 253, 516 N.W. 2d 8 (Wis. Ct. App. 1994). Fincantieri's argument would render Section 20 mere surplusage, as according to Fincantieri, indemnity claims would be governed by the warranty provision; and therefore, that interpretation must be rejected. See id.

### D. Section 11 Does Not Modify Section 20.

Likewise, it would not be reasonable to import the one-year limitation in Sesction 11 into Section 20 in order to retroactively constrict Manitowoc Company's unlimited promise to indemnify Vane against claims by third parties. Nothing in either provision even remotely supports that interpretation of the agreement. The provisions do not refer to each other and are contained in separate sections, several pages apart, in the agreement. As explained above, they address distinct scenarios and fall into distinct legal categories. Therefore, there is no basis for arbitrarily cut-and-pasting a one-year limitation from Section 11 into Section 20, no matter how much Fincantieri may wish it existed in Section 20 as well.

Moreover, it would be illogical for Vane to have assumed that indemnity claims were subject to any back-door limit hiding in the warranty provision. A court must interpret a contract reasonably, so as to avoid absurd results; give words their plain meaning; read the agreement as a whole; and give effect where possible to every provision. Star Direct, Inc. v. Dal Pra, 2009 WI 76, ¶ 62, 319 Wis. 2d 274, 767 N.W. 2d 898. As one court put it, "contracts should be interpreted in a way which makes sense." Operative Bricklayer's Union No. 64 of PA, supra, 45 F.R.D. at 431 Fincantieri's interpretation does not make sense; therefore, it should be rejected.

### E. Fincantieri's Argument Could Only Depend Upon the Broadest Possible Conception of "Ambiguity."

As explained above, Fincantieri's interpretation is inconsistent with the plain meaning of the agreement, and therefore, its motion fails on its face. But even assuming, *arguendo*, that the Court indulged Fincantieri's interpretation of the agreement, the conflict between that interpretation and Vane's could at most be construed as presenting an ambiguity that would have to be resolved by a finder of fact, not by the Court on a motion to dismiss. See, e.g., Operative Bricklayer's Union No. 64 of PA, supra, 45 F.R.D. at 431.

### CONCLUSION

For the foregoing reasons, Vane respectfully requests that the Court deny the Third-Party Defendant's motion to dismiss.

Dated this 29th day of August, 2011.

                LIEBMANN, CONWAY, OLEJNICZAK & JERRY, S.C.
                Attorneys for Plaintiff, Vane Line Bunkering, Inc.


                By:   /s/ Gregory B. Conway
                        Gregory B. Conway
                        April Rockstead Barker

P.O. ADDRESS:
231 S. Adams Street
P. O. Box 23200
Green Bay, WI 54305-3200
Phone: (920) 437-0476
Fax: (920) 437-2868
State Bar Nos. 1012636, 1026163,
#1053825_2

12

# CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2011, I served the foregoing document via electronic filing to all counsel of record.

/s/ Lynn Steinbrecher
Lynn Steinbrecher, Legal Assistant to
April Rockstead Barker
231 South Adams Street
Green Bay, WI 54301
P. O. Box 23200
Green Bay, WI 54305-3200
920-437-0476
920-437-2868 Facsimile
E-Mail: lstein@lcojlaw.com