UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VANE LINE BUNKERING, INC.,

        Plaintiff,

  v.                                                         Case No. 11-C-240

THE MANITOWOC COMPANY, INC.,

        Defendant and Third Party Plaintiff,

  v.

FINCANTIERI MARINE GROUP HOLDINGS, INC., and
FINCANTIERI-CANTIERI NAVALI ITALIANI S.p.A.,

        Third Party Defendants.

**ORDER DENYING THIRD PARTY DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff Vane Line Bunkering (Vane) filed this lawsuit against Defendant The Manitowoc Company, Inc. (Manitowoc) for an alleged breach of a guarantee Manitowoc gave to induce Vane to enter into a shipbuilding contract with Manitowoc's subsidiary, Manitowoc Marine Group LLC (MMG). Manitowoc filed a third party complaint against Fincantieri Marine Group Holdings, Inc., and Fincantieri-Cantieri Navali Italiani, S.p.A. (collectively "Fincantieri") who Manitowoc alleges purchased MMG and assumed all of MMG's obligations under its shipbuilding contract with Vane. Fincantieri has moved for dismissal of the entire case on the ground that Vane's claim is barred by the plain language of the warranty provision of the agreement. For the reasons discussed herein, Fincantieri's motion to dismiss will be denied.

**BACKGROUND**

On November 18, 2005, Vane and MMG entered into a "Shipbuilding Agreement for the Construction of Up to Two 145,000 BBL Articulated Tug/Barges between Manitowoc Marine Group, LLC as 'Builder' and Vane Line Bunkering, Inc. as 'Owner.'" Manitowoc provided Vane with a Parent Guaranty pursuant to which Manitowoc agreed to answer for all deficiencies in MMG's performance under the Agreement. (ECF No. 28, Ex. A.) MMG delivered the first tug/barge vessel to Vane in October 2007.

In August 2009, while Vane chartered one of the vessels to Sunoco, aviation, gasoline held in one of the cargo tanks leaked into a neighboring tank, contaminating the gas oil in that tank. (*Id.* ¶ 9.) Vane ultimately agreed to pay Sunoco $200,000. (*Id.*) Vane then commissioned an investigation which concluded that the contamination occurred as the result of the failure of a bronze sway bar within the vessel's cargo pump, a piece of which lodged in the deepwell drain valve restricting it from full closure and thereby allowing intermixing of the aviation gasoline and the gas oil. Vane demanded payment from MMG, and when it refused, sued Manitowoc under its guarantee.

In the meantime, on August 1, 2008, Manitowoc entered into a purchase agreement with Fincantieri, whereby Fincantieri purchased MMG from Manitowoc.[1] (Third Party Compl. at ¶¶ 8–9.) According to the third party complaint, the purchase agreement contained a provision under which Fincantieri agreed to indemnify Manitowoc against any losses arising out of the

---

[1] After the purchase, MMG's name was changed to Fincantieri Marine Group, LLC pursuant to a change in its Articles of Incorporation.

operation or ownership of MMG after the sale. Based on the purchase agreement, Manitowoc claimed Fincantieri was liable for Vane's claim for damages.

Fincantieri's motion to dismiss is based on the expiration of the one-year limitation period in the warranty provision of MMG's shipbuilding contract with Vane. Vane does not dispute that the warranty has expired but contends its claim instead arises under the Agreement's indemnity clause. Vane maintains that under the indemnity provision, Manitiowoc or Fincantieri is still liable for damages to third parties arising out of the Builder's negligence. (ECF No. 27 at 4.)

## LEGAL STANDARD

A motion to dismiss challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief . . . to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As a general rule, notice pleading remains the standard. *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financing Services*, 536 F.3d 663, 667 (7th Cir. 2008)).

When ruling on a motion to dismiss, the court generally should consider only the allegations of the complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir.2002). When a written instrument, such as a contract is attached to the complaint as an exhibit, however, its provisions become a part of the pleading "for all purposes." Fed.R.Civ.P. 10(c). And while a court must accept well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff, to the extent that the terms of an attached contract conflict with the allegations of the

3

complaint, the contract controls. *See Rosenblum*, 299 F.3d at 661 ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.") (quoting 5 Wright & Miller, FEDERAL PRACTICE & PROCEDURE: Civil 2d § 1327 at 766 (1990)). "[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999). On the other hand, a court should grant a motion to dismiss based on a contractual defense only if the language of the contract is unambiguous and clearly bars the plaintiff's claim as a matter of law. *Bartel v. NBC Universal, Inc.*, 543 F.3d 901, 903 (7th Cir. 2008). Where the plaintiff offers a plausible reading of the contract which would allow the claim to survive, the motion should be denied.

## ANALYSIS

Ultimately at issue is whether the August 2009 contamination incident can give rise to a claim based on breach of contract when the warranty provision expired in October 2008. Breach of contract has familiar elements in Wisconsin; the plaintiff must show a valid contract that the defendant breached and damages flowing from that breach. *Northwestern Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 296 (Wis.1971). Fincantieri does not dispute the Agreement's existence or validity but whether MMG could be in breach as the one-year warranty limitation has expired. Fincantieri contends all of its liability under the Agreement terminated with the end of the one year and thus Vane has failed to state a claim upon which relief can be granted.

Section 11 of the Agreement, entitled "Builders' Warranty", states in relevant part:

> Builder warrants that (i) all material and equipment . . . shall be free of defects, and (ii) all labor and workmanship, including labor and workmanship for the installation of Owner Furnished Equipment, [Equipment] furnished by Builder or any subcontractor shall have been performed in a good and workmanlike manner.

(ECF No. 28, Ex. A at ¶ 11.) The next paragraph reads: "Builder shall have no responsibility whatsoever with respect to *any* defect, claim, or loss of the Vessel not reported in writing to Builder within one (1) year from the date of delivery (such period being hereinafter referred to as the 'Builder's Warranty Period.'" (emphasis added) (*Id.*) Section 3(c) of the Agreement stipulates that the Delivery and Acceptance Certificate (executed concurrently with the delivery of the vessel) "shall be conclusive evidence that all the duties and obligations of each of the parties have been performed except as to (i) Minor Defects . . . and (ii) items covered by warranty." Once the one year warranty expires, the Delivery and Acceptance Certificate becomes conclusive as to the performance of all duties and obligations of the Builder." (ECF No. 28, Ex. A.) Based on this language, Fincantieri contends the Builder's liability no longer applies since the contamination incident occurred past the one year warranty period.

In addition to the aforementioned contract language, Fincantieri points to Section 1(e) of the Agreement and the revised Section 1(e) set forth in Amendment No.1 as support for its assertion that all builder liability was to terminate after one year. Under those sections, Vane notes that the owner was allowed to have representatives on site during "construction, outfitting, tests, and trials" of the Vessel. According to Fincantieri, this provision provides further support for a definite expiration of liability because they encourage prompt notice of defect. (ECF No. 18 at 4.)

Vane counters by noting the contract contains both a warranty clause *and* an indemnity clause as written in Section 20 of the Agreement. (ECF No.27 at 6.) Vane notes it is "not seeking reimbursement for the repairs to the defective sway bars on the [Vessel] but for the liability it incurred to Sunocco that arose due to contamination, along with its attorneys' fees and expenses." (*Id.* at 8.) In Section 20, MMG agreed to "indemnify and save [Vane] harmless from any and all liability . . . resulting from the negligent acts or omissions of [MMG]." (ECF No. 28, Ex. A.) In other words, Vane contends Section 11 provides a one year warranty with regard to the repairs and or replacement of physical defects in the vessel, whereas Section 20 provides Vane the right to be indemnified by MMG for "any and all liability" to others that is attributable to MMG's negligent acts. Vane thus notes its complaint has stated a claim — premised on negligence and the subsequent breach of a *different* part of the contract — upon which relief can be granted.

Vane's construction of the contract is not implausible. Although its terms are broad, the one-year limitation is contained within the Builder's Warranty provision, Section 11 of the Agreement, under which the Builder warrants that the material and equipment are free of defects and that the labor has been performed in a good and workmanlike manner. The provision limits the Builder's obligation for breach of the warranties provided to repair or replacement either at its yard or elsewhere. This section of the Agreement makes no mention of the Builder's obligation to indemnify the owner for liability incurred by the owner to third parties which is governed by Section 20, an entirely separate provision of the Agreement. No similar limitation appears in Section 20, entitled "Indemnity Against Claims"; nor does Section 20 incorporate or even reference the Builder's Warranty limitation contained in Section 11. It is also noteworthy that no such limitation appears in Section 12, entitled "Limitation of Liability".

Fincantieri argues that "the unambiguous intention of the Shipbuilding Agreement is to limit the Builder's liability for defects in material, equipment and installation to the one year warranty period evident in the Warranty Section and several other provisions of the Shipbuilding Agreement." (Reply at 3.) It suggests that Vane's reading of the indemnification provision in Section 20 would read this key provision out of the contract. But it is the language used by the parties, not their unexpressed intentions, that control the meaning of a contract. MMG may have intended to limit its overall liability to one year after delivery, but such intent is of no import in the absence of contractual language unambiguously setting such a limit. Moreover, Vane's reading would not have such an effect in any event. The one year limitation period so clearly delineated in Section 11 does not naturally or automatically extend to Section 20's silence on duration, and the same is true in reverse. In other words, just as the one-year limitation in Section 11 is not necessarily read into Section 20, the *lack* of a time limitation in Section 20 does not annihilate the one-year limitation in Section 11. The two provisions do not refer to each other and address distinct scenarios.

Finally, Fincantieri argues that several principles of contract construction support its interpretation. These principles include the rule that the specific is to govern over the general, and that contracts should be construed to give a reasonable meaning to each provision so as to avoid rendering any provision mere surplusage. (Reply at 4, citing *Goldmann Trust v. Goldmann*, 26 Wis. 2d 141, 148-49, 131 N.W.2d 902 (1965); *Foskett v. Great Wolf Resorts*, 518 F.3d 518, 522 (7th Cir. 2008)). But as explained above, it is not clear how Vane's construction of the contract violates either of these principles. Limiting the applicability of the Builder's Warranty Period to the Builder's Warranty does not read it out of the contract or make it surplusage. And refusing to read

7

it into the Indemnity Section does not render the contract unreasonable or absurd, especially since the Builder may be unable to contractually limit claims by third parties who suffer losses as a result of the Builder's negligence in any event.

In sum, in light of the language and structure of the Agreement, the Court is unable to say at this point that the Warranty limitation bars Vane's claim for indemnification. Fincantieri's motion to dismiss the Complaint for failure to state a claim (ECF No. 17) is therefore **DENIED**.

**SO ORDERED** this   4th   day of October, 2011.

                                                         s/ William C. Griesbach
                                                         William C. Griesbach
                                                         United States District Judge